Good morning. May it please the court. My name is Molly Quinn and I represent the appellant Tiffany Janis. We're asking the court to vacate Ms. Janis' conviction for discharging a firearm in connection with a crime of violence under 924 C because the underlying offense, second degree murder, does not qualify as a crime of violence after Davis. Second degree murder unquestionably qualifies as a crime of violence. Second degree murder does not qualify as a crime of violence after Davis. Second degree murder unquestionably qualifies as a crime of violence after Davis. Second degree murder does not qualify as a crime of violence under the residual clause. That clause, of course, was invalidated by the Supreme Court in Davis, and second degree murder does not qualify as a crime of violence under the remaining force clause in 924 C3A. First, second degree murder does not require the targeted conduct required by the force clause under the Supreme Court's board and opinion. Counsel, let me interrupt you off the bat. I understand that malice of forethought, this is the only time it appears in 18 U.S.C. Is that correct? I'm not aware of it appearing anywhere else. Right. Clerks swear to me. I would agree with that. Other place than 18 U.S.C. And given the specific words malice of forethought, doesn't that mean, especially called second degree murder, it's the use of physical force against another, quoting from the statute, and meets the Borden test of the use of force against another, direct action, add object of force, target it, everything Borden says. So isn't this the quickest categorical analysis it could possibly be by simply using the word malice of forethought? No, I don't believe so. I understand. Thank you. I understand the temptation. Of course, second degree murder sounds violent. Our position is, sure, it qualified as so under the residual clause. But with regards to the force clause, once you kind of dig into what does malice of forethought mean, this Court's case law is clear that it certainly isn't intentional and it certainly isn't knowledge or knowing conduct. And so when you look at the minimum mental state encompassed by the malice of forethought element, that is, again, at minimum, extreme recklessness or depraved heart conduct, kind of depending on the formulation. And I think the preeminent formulation of that is from this Court's Blackout case, which gets repeated in other circuits and throughout its circuit case law, that malice may be established by evidence of conduct. Now, wait. You've taken away the forethought. Now, we've got a lot of cases on malice. Black Elk, I've got a whole crew of them here. Do we have any on malice of forethought? I guess I would say that my interpretation of the Black Elk formulation is that it is interpreting the malice of forethought. Okay. I'll have to see. Go ahead. Proceed. So what's your hypothetical scenario? You know, we have this absurd exercise where you have to think of the most, the least violent hypothetical, and then we have to say all the violent crimes don't count because there's one hypothetical that doesn't count or doesn't meet the test. What are your examples? I, in this case, I have more than just hypotheticals. We have actual case law from other circuits, and that would be kind of — Well, I meant hypothetical violations that could occur. Sure. But go ahead. Thank you. And I'm referring to the examples of second-degree murder convictions where the courts found sufficient evidence of malice of forethought based on dangerous driving, unsafe driving, drunk, intoxicated driving, kind of what we would call extremely — Driving cases you think are the best example of cases that don't qualify under Borden? That's correct. And that's because they require extreme indifference to the lives of the other people in the vehicles or the other people on the road, but that's not targeted at the people on the road or in the vehicle? Is that the theory? It is. Those cases all involve an awareness of risk, obviously, but they don't require, like you just said, the targeting of a conscious object of force. And so I'd kind of go back to the language of Borden, which talks about to fall under the force clause, the conduct has to be directed at, targeted at, aimed at another person. And that all comes from the word against, or not all. I believe the main source of that is the word against. This is the plurality opinion. It is the plurality opinion. I think in this context, I think Justice Thomas' concurrence goes further, requiring an intentional act with intentional consequences. Well, I don't know about — I guess that's a question. That's a question. Does it go further? I think the Thomas opinion also allows for knowledge to be sufficient. And if you look at his Voisin opinion, he talks about practical certainty, substantial certainty, equating to knowledge. I think he does. Oh, I'm sorry. And there's some discussion in there, too, about how force that's intentionally directed against one person but ends up hitting another person can count as force against the family member, under the common law view that there's transferable intent. So I don't know for sure whether it is broader. I was going to ask you about whether — Sure, I think that — — extreme indifference means that the likelihood of injury is so practically or substantially certain that it equates to knowledge. To address that part first, I don't believe it does. I think that this — it can't equate to knowledge because this Court has said knowledge is not required for malice of forethought. In terms of does it get close enough, again, I would say no, because if you actually go back to the language of Borden, it uses phrases like the force clause requires that a person direct his action at another individual, target another individual, that the conduct be aimed, that there must be a conscious object, not the mere recipient of the force, or that this language in the force clause has oppositional or directed meeting or is intent-laden language. And I interpret the force clause under the plurality, and I'll get back to Justice Thomas' opinion in a moment, as requiring specificity. And I think that's the difference between an awareness of a great degree of risk, sufficient for malice of forethought, and — Okay. What about the Thomas opinion in Voisin? Sure. And in this case, is it possible that on that view a likelihood of injury that's substantially certain would qualify? I think — and I don't have that opinion right in front of me right now, but I think in Justice Thomas' Voisin dissent, which he, of course, incorporates in Borden, he's divided into several categories of conduct. There's the pure reckless act that has a reckless consequence, and he refers to — I think the example that he gives is the texting dad, the person who's texting while driving. And I think that our example, our best example, the driving cases, is kind of that unintentional, that the force in the driving cases, even under sufficient that qualifies malice of forethought, would fall under that category that Justice Thomas says should never qualify under the force clause. Go ahead. Thank you. And I did, on the topic of the driving cases, I did want to briefly address the argument that frequently comes up, which, of course, is that a 924C prosecution involves a firearm. It's hard to imagine a prosecution under 924C involving these reckless driving cases. And I would just like to point out that the — excuse me, the elements are distinct for a 924C prosecution, that the definition of crime of violence itself does not incorporate a firearm, that that's a separate element of a prosecution under 924C1. And there are examples, and this is from the opinion in Davis itself, pointing out that this definition of crime of violence in 924C applies throughout the criminal code, kind of interchangeably with the definition in 16. And so it's not just cases that involve a firearm as a separate element of the offense. I think the best example of that is using false identification documents in connection with a crime of violence. So before I move on from kind of the depraved heart, extreme recklessness, I want to talk about this Court's opinion in United States v. Goose, which is kind of a pre-Voisin, pre-Fogg, pre-Borden opinion, where this Court found that extreme indifference recklessness fell outside the force clause in the context of the sentencing guidelines. There, the Court was interpreting an Arkansas statute that could be committed by causing physical injury to another person under circumstances exhibiting extreme indifference with a reckless state of mind. And the Court found that because that offense could be violated with a mental state of recklessness, it did not qualify as a crime of violence under the Guidelines Force Clause. And that was true even though that statute required that the defendant manifest extreme indifference to the value of human life. But it used the term recklessly right before that, correct, the statute? I believe that. Because it says recklessly under circumstances manifesting extreme indifference to life, right? It did. I think the word recklessly is actually incorporated in a separate definition in the statute itself, but that's how the Court's opinion, as we quoted it, did characterize it. You're right. That is the way the Arkansas Supreme Court characterizes it, so it doesn't matter. But you're correct. But I can't resist saying to you, it doesn't have malice of forethought, right? It's a reckless case. That's true, yes. It does not have the language malice of forethought. I guess my point is that as malice of forethought has been interpreted by this Court, it's incorporated, it is the functional equivalent of depraved heart recklessness or extreme indifference recklessness. Do you think the texting father would be guilty of second-degree murder, though? The texting father? Yeah. I think it would, not to punt the question, depend on the circumstances. Well, you're using it as your reason why the Justice Thomas' view would. That's true. So if it doesn't qualify as second-degree murder, then it doesn't help you. I think it could if the father were texting while driving on a busy stretch of road or a road that had kind of substantial or sharp curves, and those are kind of the circumstances. It's got a tough language, willful, deliberate, malicious, premeditated. You've read it. Which one of all the different clauses in 1111 does it fit in, do you think? The phrases, they're not clauses. Phrases, does it fit in? You know what I'm trying to say? If you were charging it under 1111, suppose you were a prosecutor, if you were charging it under 1111, which one would it fit under? The texting while driving? Yeah. I would call that malice of forethought. Any other murder is that any other murder language at the end is second-degree murder. I wouldn't argue that it qualified as first-degree murder. All the premeditated stuff. Well, go ahead with your argument. Yeah. Sure. I think that the— What about the part of Justice Thomas' opinion where he says a person acts knowingly if he knows with practical certainty that a result will follow from his conduct? He knows the move is so dangerous that he's practically certain that the other person will be injured. Why wouldn't that apply to these, even these driving cases? I think—sorry to interrupt you. I think that's the same formulation that the board in plurality is using as a definition of knowing. And this Court has said, I think, the water case is the one that we cited. Second-degree murder does not require knowledge. And I don't think that the extreme indifference or, I guess, depraved heart recklessness reaches that substantial certainty. Again, because there's not knowledge of, like, a specific—there's just a recipient, of course. There's not, like, a conscious targeting of a particular victim. What was the waters case you mentioned? That is a case that we cited that says second-degree murder does not require knowledge or intent to kill. What were the facts there? Was that a murder case? It is a second-degree murder case. What was the person convicted of doing? I believe there was a firearm, a shooting death resulting from a firearm. So it's not—it's definitely not a reckless driving case, to be fair. But, I mean, did the Court say the person didn't have knowledge? I— Or was it just dicta? I would have to look back at the case before rebuttal. But my recollection of the facts is that people were recklessly messing around with a firearm and certainly didn't intend or did not know that there was a live round or a round that would hurt another or kill another person. I—if there are no further questions, I would like to reserve the remaining time. Very well. Thank you. Thank you for your argument. Mr. Coloner, we'll hear from you. Morning. May it please the Court. My friend and colleague, Ms. Quinn. I'm Kevin Coloner with the U.S. Attorney's Office in South Dakota representing the United States. Your Honors, we are here asking the Court to affirm the district court's dismissal of the appellant's 2255 motion in this case. There are several important things that the parties agree upon coming into this appeal. One, that the burdened plurality reserved ruling on whether offenses that require a depraved heart and extreme recklessness, mens rea, still qualify as violent crime predicates. And the dissenting four Justices were even more emphatic. They were clear that they felt that such offenses still do qualify. Now, second-degree murder, another thing that the parties agree upon, is one of these depraved heart or extreme recklessness offenses. Judge Benton, you asked are there any cases on malice of forethought. The U.S. v. Johnson case from this circuit, I can find a site for you. 879 F. 2nd, 331, a circuit case from 1989. It's relied upon by the district court in its order. And you quote it, too. Go ahead. Yes. That defines malice of forethought as an intent at the time of a killing willfully to take the life of a human being or an intent willfully to act in callous and wanton disregard of the consequences of human life. What is there in this board of plurality opinion that makes you think they would agree that these driving cases qualify? Well, that makes me think the driving cases would qualify? Yes. She says there's cases, and she quotes them, where federal courts have upheld second-degree murder convictions for these driving situations. Yes. And we've got to use this categorical approach where we have to decide whether those would count. And so I take it you're saying, unless you're saying we don't have to consider those, you take it you must be saying that we can read the board in plurality and say, oh, yes, they would count reckless drunk driving, extremely reckless drunk driving, or whatever the scenario is in these cases. I guess I'd say two things. One, as we pointed out in the briefs, those cases didn't lower the mens rea for second-degree murder. They required a finding on the facts of those cases of some sort of extreme recklessness. Again, the board in plurality didn't address what that meant, but our case law is clear that that means some kind of a heightened awareness of the potential risk to others, and that falls in line with the board in plurality's definition of knowledge much more closely than it falls in line with ordinary recklessness in the sense that, you know, as you've talked about, the Boisine opinion by Thomas talks about this practical certainty that a consequence will result. Well, that's very similar to how extreme recklessness offenses have been defined by this court, that one has to act with an awareness that their actions carry a higher probability that injury to others will result. So that's the first thing I'd say. The second is, this is a... The target... Well, go ahead with your second point, and then I've got another question. Go ahead. Okay. My second thing is that this is a 924c offense, which means that a person has to, during and in relation to a crime of violence, use or carry a firearm. So there's a real sense in which these driving... Oh, but we have to use these hypotheticals, like the guy is out driving drunk on the wrong way on the highway, and he happens to have a gun in his pocket. So now he's carrying the gun during and in relation to the driving accident. I mean, I know it's absurd, but that seems to be the... I'm not sure that would be in relation to the... You said carrying would count. Right, but is that in relation to the driving offense? During. It's during, but I'm not sure it's in relation. Right? And that's not just my reasoning. That's a point made by the Ninth Circuit and bank decision in Begay. They talk about how these reckless... That 924c necessarily only arises when firearms are involved, and so those drunk driving cases are of limited relevance. You mean you think we can exclude them because... I mean, I'm sure somebody out there could come up with a hypothetical where the gun is in relation to... I mean, let's say it's a getaway car or something, and the person has the gun just in case somebody confronts them or whatever. I don't know. Somebody's going to come up with a hypothetical where the gun is in relation to. Maybe there will be a day when I'm up here arguing for the sufficiency of a conviction in such a case, but I just can't imagine how we can make the case that that's in relation to the crime of violence. My point is that the focus here is on the firearms statute. It makes it somewhat different than all of these cases that deal with sentencing enhancements, say under the guidelines or even the Armed Career Criminal Act, where it's a crime that was committed in a person's history that's been added as a sentencing enhancement. This 924c is doing it in relation to the very crime of violence that we're talking about. So, you know, we're only up here because a firearm was used in the second-degree murder that we're here debating whether or not it's a crime of violence. And that's – I don't think you can divorce the 924c aspect from the categorical analysis here. Judge Collinson, you said you had another question for me when I finished that response, so. Well, I was going to ask you about the targeted directedness aspect of the board in plurality. Right. Whether some of these extreme recklessness cases would – or whether all of these extreme recklessness cases would. To me, the best point that's been made on that was made by the First Circuit before Borden, I think anticipating Borden and Baez-Martinez, and then repeated by the Ninth Circuit in Begay, which says, you know, to be – to act with extreme recklessness, you have to be aware that there are potential victims before you can have an indifference to them. Right? You have to act with some – the government has to prove at the very minimum that there is a conscious indifference to the harm to others. And so that provides the targeting element. Even if you don't have a particular person in mind? Well, I mean, Justice Thomas's opinion in Voisin where he's talking about, well, what if a bullet hits a different person you didn't intend to hit? I mean, certainly that's – that provides the mens rea even in a knowingly scenario where you have a consciousness of the practical certainty of consciousness that some will be harmed. It's not a requirement that you are targeting a single individual and that's the individual you murder. It's an awareness that there's a high probability in extreme recklessness cases that an injury to another will result. You know, the third thing I was going to point out that I think the parties agree on is that every court that's decided this issue post-Borden has found that extreme recklessness offenses still apply after Borden, are still valid predicates for 924C and for other predicate statutes. That's the First Circuit, the Ninth Circuit in Bank, the Fourth Circuit, the Eleventh Circuit, the Sixth Circuit. We've cited all those cases. And, you know, all those opinions reach their conclusions through similar but somewhat, you know, at times different routes. I, of course, commend all those cases to the Court's reading, but there is no court that I'm aware of that has disagreed with the government's position in this appeal. How many of these categories do you think there are? I read the Borden plurality and I think there are four. And then, of course, extreme recklessness is in the footnote. You think we're stuck with five, sort of a model penal code approach? I think the issue, Your Honor, is that recklessness is kind of in a strange world all its own because it's a blanket term that's used to describe a mens rea that at the lower end is probably just higher than negligence and at the higher end is... That's the reason extreme recklessness was... Right. I meant there are five. Go ahead. That extreme recklessness is... I think I agree with you, but what I'm saying is that... You think the plurality meant we're stuck with five? I think the plurality sidesteps the question of where extreme recklessness falls. I think its reasoning is in line with our position today that extreme recklessness is closer to knowledge than it is to negligence. And I can't imagine a sixth category, so I guess I'm in agreement that there's five. Well, malice aforethought would be a sixth. Well, I think malice aforethought... Just to give you a contender, go ahead. I think malice aforethought is at the high end of extreme recklessness, right? And the Eastern case laws defined it for years. My colleague cited the Blackout case. There's the Cotier case. There's a number of other cases that talk about what malice means. In the Johnson case, what malice aforethought means. As I've, of course, said in our briefing, that sort of a mens rea was found sufficient to support a capital sentence by the Supreme Court. So it certainly doesn't diminish the seriousness of these offenses. And I know in this categorical approach world, serious offenses are sometimes disqualified. I just don't see any reason in this Court's precedent or in the Supreme Court precedent why it should invalidate second-degree murder. I do want to address the secondary alternative argument that's been made by Defense Counsel based on the U.S. v. Flute case. I know that that argument was foreclosed by this Court in McCoy. Counsel makes the point that McCoy came before Borden, and it relied in part on some cases that Borden, I guess, draws into some question. The ninchpin of the holding in the Flute case was that, under those very complicated circumstances in that case, was that the child was born alive. The involuntary manslaughter that was charged was not against an unborn child. It was against the born-alive child. So it's really a temporal proximity argument, and that argument has been foreclosed by Castleman and by this Court's opinions following that in Rice and other cases. You know, going back to your point that in a 924C case there has to be a gun involved, how does that relate to whether there's a crime of violence? Under the categorical approach, do you have to look at the crime of violence question independently of the carrying of the gun? Well, in other words, do we have to consider these drunk driving or these reckless driving cases, even if they don't involve guns, to decide the first-order question whether there's a crime of violence? I don't think so in a 924C case. Now, maybe in a 922 case where we're talking about, you know, what's a crime that the person committed in the past unrelated to the firearms charge, then, I mean, that was the situation in, say, the Fogg case. No, but I'm saying the statute here, as I understand it, says it's a crime to use or carry a firearm during and in relation to a crime of violence. And so the question we have to decide, as I understood it, was is second-degree murder a crime of violence, not independent of whether there's a gun involved in this crime? My point, Your Honor, is I think that the Ninth Circuit in Begay was making a very good point, which is that what we're construing is a, is the crime of violence in context of 924C. And, look, the Supreme Court in Leocal and in Borden and many other cases say that when we're engaged in this categorical approach, it's important to focus on the statute that we're looking at. Context is important, the Court tells us. And here, that's the... So you mean we can use, like, a narrower version of second-degree murder because only certain second-degree murders could be committed during and in relation, in connection with a gun? I can't imagine a second-degree murder during and in relation to the carrying of a gun that doesn't fit as a crime of violence under essentially any scenario. But is that a categorical approach, then, to second-degree murder if we're excluding certain second-degree murders? I think we're maybe talking, or maybe my understanding leads me to talk, misunderstanding leads me to talk in circles. But what the Court is construing here is a 924C conviction in which the during and in relation to was second-degree murder. There may be cases in which there's a second-degree murder that involves a driving, pure driving conviction without a firearm involved, and I think that's a question for another day. I'm out of time. Thank you for your argument. Thank you very much, Your Honor. Thank you for your argument. Ms. Quinn, will you rebuttal? Thank you. I'll start with a conversation where we just left off. I don't think this Court can incorporate a firearm into the definition of crime of violence that it's interpreting here today. The definition of crime of violence in 924C3 applies in various places throughout the criminal code, and I'll just reiterate that example, that the same definition of crime of violence applies to using false identification documents in connection with a crime of violence. And it is the same definition that we're construing here today. I think statutory language and then the categorical approach require that crime of violence be interpreted independently of the requirement of a firearm under a prosecution under 924C1. And I'd just like to kind of take a step back, that what we're asking the Court to find is that second-degree murder does not qualify as a crime of violence, as that statute has been interpreted by the Supreme Court. We're not asking the Court to find that second-degree murder never qualified as a crime of violence. It certainly did under the now-invalidated residual clause. We're not asking the Court to vacate any convictions for second-degree murder itself, and we're not asking the Court to find that second-degree murder is not a morally culpable crime or that it couldn't be constitutionally eligible for the death penalty. Our argument today is that Congress always intended second-degree murder to be a crime of violence, and it did so under the residual clause. And it's the invalidation of the residual clause in the categorical approach that means it no longer qualifies as a crime of violence. Thank you.